The next case on the calendar is Bloom v. Azar. May it please the Court, my name is James Pistorino, and I represent Dr. Bloom. This should be a straightforward case of statutory construction. The statute in this case says that an individual is entitled to judicial review if more than $1,000 is in controversy. Dr. Bloom is an individual and more than $1,000 is at stake. That should be the end of the inquiry. Nothing in the Medicare Act changed how district courts determine the amount in controversy when deciding their own jurisdiction. Dr. Bloom sought judicial review of three claims that are for more than $3,900. As a matter of law, that established the jurisdiction of the district court to resolve all three claims because they are way more than the amount that is required. I hate to rely on so-called canons of statutory interpretation because as frequently as not, there is a canon that points in the opposite direction from the one that one relies on. Here you have a statute that creates a monetary amount threshold for two different things. One of them is administrative review and the other is access to court for judicial review. Then the statute explicitly says that in the case of the administrative review, there can be aggregation under certain circumstances that are defined. It says nothing about such aggregation with respect to judicial review. Isn't the fair inference of that, which is summarized by expressio unius exclusio alterius, isn't it the fair inference that Congress was saying aggregation can be had for, to meet the monetary threshold for administrative review, but we're not doing that for judicial review? Why isn't that the apparent meaning of the statute? Respectfully, we would say no. How district courts determine the amount of controversy is a matter that's been long settled in this Court. I know we cited to the Court the Exxon case. And, for example, in the Exxon case, they repeat that it's been long held. You just add them all up. And they cited to a case from 1896 for that proposition that a single plaintiff bringing a single case to determine the amount of controversy, just add up all the claims. So when Congress was legislating for the Medicare Act, it was doing it against the backdrop of how litigation and determining amounts and controversy in district courts works. So it didn't have to say anything more in the Medicare Act to make sure that the regular rules of civil procedure would apply to judicial review. Similarly, Your Honor, in the Medicare Act, it doesn't say we're allowing summary judgment, Rule 56 proceedings in Federal court. It doesn't need to say that. So in order for the Federal rules of civil procedure to apply, every Act does not have to expressly incorporate the rules of civil procedure or repeat them itself. So the absence of saying anything about it, again, from our perspective, is exactly backwards. Congress is relying on the regular rules of how Federal courts work when enacted this. And with that backdrop, your next question is, okay, we know how to aggregate or determine the amount of controversy in a Federal district court. Now I'm creating a new Act that's going to act for the Medicare Act. Should there be aggregation before the Secretary to figure out how much is at stake to meet this $100 limit? Congress says yes in 1395 FF. They explicitly tell the Secretary, for hearings and appeals, you shall allow aggregation and provide two specific ways, one of which crosses different individuals, mandating that the Secretary do it. The Secretary has no option but to do it. So, again, to read the statute the way we say, again, from the district court's perspective, he believed that if he construed individual with its plain, ordinary meaning, it would render some portion of the statute superfluous. And again, in our view, that's exactly wrong. The Secretary concedes in their brief, I believe on page 28 of their brief, that as used in the statute, the aggregation provisions you're referring to refer only to hearings or appeals before the Secretary and say nothing about how you would calculate the amount of controversy in a district court. But to the extent that your argument relies a lot on the use of the word individual in the provision, individual is also used with reference to the Secretary and the limited aggregation that is required under the statute for the Secretary. So I don't think the word individual signals to us that we should anything in particular about aggregation or non-aggregation. We'd have to read it in two different ways. The same provision has individual referring to the Secretary and individual referring to proceedings in a United States district court. The same provision, I think if you're referring to 1395FF, I think B1E2, for example, that talks about aggregation for appeals to be aggregated, for appeals to be aggregated. So those provisions. But above the first subsection 1, it just says shall be entitled to for judicial review. So I don't think the word needs to be read any differently. Under, for example, subsection 2, Roman numeral 2, it talks about aggregating across individuals, right, across individuals. So this provision of the statute makes it nondiscretionary. The meaning is the Secretary must allow aggregation to meet the $100 limit. But it doesn't say anything about how you would calculate it for a judicial review in any way sort of almost like repeal by implication of more than 100 years of calculating the amount of controversy. Roberts. Well, I understand that the initial or the Act in 1986 had a provision that said the judicial review shall not be available to the individual if the aggregate amount in controversy is less than $1,000. Is that correct? I believe so, Your Honor. And that was deleted. The word aggregate was eliminated in 2000. Is that also right? I believe that's correct, Your Honor. And do you have a sense, based on legislative history or anything else, why the word aggregate was eliminated in 2000? No. No legislative history was cited for why the change. Obviously, there's a series of stylistic changes. If you look into the earlier version of the statute. That's a stylistic change for you, isn't it? When you say stylistic change, the word aggregate appears in 1986 and in the context of judicial review, and it's eliminated in 2000. But the statute still says an individual. The statute still says an individual. So from our perspective, just the ordinary, plain ordinary meaning of the word individual, you just apply the ordinary meaning of the word individual. So if Congress had the words individual and aggregate in 1986, that seems to undermine your argument a little bit, unless what you're saying is that they realize that by saying individual, it was assumed to mean aggregate. May I answer? I see a mic. Yes. So we would say that change within this respect did not really change the scope of what the statute says. The prison that was eliminated didn't say an individual may aggregate. It said that review shall not be available. I'm sorry. What did it say? Review shall not be available if what? The current provision says that. No, the eliminated provision. Judicial review shall not be available to the individual if the aggregate amount in controversy is less than $1,000. So the implication of that was that, all right, so it denied review, but the removal of that doesn't necessarily imply that an intention that aggregation not be allowed. Correct. Correct. And if I may, we would say, in fact, the word aggregation here is probably not the correct word for use from a district court perspective. I don't understand why you have made your primary argument this one, because if your secondary argument prevails, and I for the moment can't see any reason why it shouldn't, if your secondary argument that supplemental jurisdiction applies, then your first argument, which is what we've been talking about all along, becomes moot, because you get review of all three of the claims. So are we arguing, I'm wondering whether we're arguing about something that really has no effect on this case. If supplemental jurisdiction applies, and I haven't heard any reason why it shouldn't apply, as it does in all other cases, then we're talking about nothing. Respectfully, we think Your Honor is exactly right. We think you get the same result from both perspectives. You have placed the great influence, the great emphasis on what seems to me to be the From our perspective, at least, Your Honor, we believe the court should just read the statute and apply the normal rules of statutory construction. So since the word individual is not ambiguous and the district court certainly didn't find that it was, from our perspective, you just read the statute. It says an individual shall not be entitled if it's less than $1,000. And in this case, an individual brought a claim. You added them all up. It was more than $1,000. He gets judicial review. Thank you. I see my time has expired. Thank you, Your Honor. I hope in the course of your argument you will address, unlike your adversary, the supplemental jurisdiction issue, because I, for one, need to be persuaded why supplemental jurisdiction isn't available here. May it please the Court, I will address that, Your Honor. My name is Melissa Rinaldo. I'm an assistant United States attorney from the District of Vermont, and I represent the Secretary of Health and Human Services in this appeal. I'll get right to it, Your Honor. Supplemental jurisdiction over the claims in this case that failed to meet the amount in controversy requirement is prohibited because the overall scheme of the special, claims-driven, complex review process embodied in the Medicare Act expressly precludes judicial review of any claim falling below the amount in controversy. Supplemental? The government's view is that we almost have got to get to this first issue before we can get to the issue of supplemental jurisdiction? Yes, Your Honor. I do think that because the Medicare Act is what governs here. This is a special statute, and we're in a special world of dealing with this huge Medicare process, which deals with, in 1980, I believe one of the cases cited, a figure of 185 million claims a year. So in order for this huge agency with this huge number of claims to deal with these without overburdening the courts, the court has to determine and interpret that amount in controversy requirement. I don't understand you. I don't understand. You said yes to Judge Lohier's question, but nothing about your answer seems to me to say yes. Your argument is not that we have to deal with question one first. Your answer is we have to deal with it eventually, because you're simply saying that supplemental jurisdiction isn't available for independent reasons of statutory interpretation. That is the issue that has been raised. And the — but I think that the statute itself, if you look at the statute itself, you do have to get to the amount in controversy requirement, because that amount in controversy is what establishes the — whether or not a claimant can walk in the court door. If the court — if the claimant doesn't get to get in the courthouse door, there is no reason to apply or determine whether or not supplemental jurisdiction applies. The claimant is in the courthouse door. I'm sorry? The claimant is within the courthouse door if the claimant has a claim that meets the threshold. Correct. In this case, however, Your Honor, the claim does not. There were — the district court dismissed two claims that did not meet the amount in controversy. But the claimant was in the courthouse on the basis of the third claim. Correct. That's correct. That's the way it always is with supplemental jurisdiction. The question in supplemental jurisdiction is whether claims that otherwise couldn't get in the courthouse door do get in, piggybacking on the one that can. Yes, Your Honor. And in this case — so if the court does go forward and review supplemental jurisdiction, it has been raised. And so certainly the court has to address it. Supplemental jurisdiction is precluded in this case for several reasons. First — Can I just — I mean, it's precluded only if it's expressly provided otherwise by Federal statute. Correct. So how does the — how does the Act here expressly provide against the exercise of supplemental jurisdiction once you have a claim that meets the threshold? This Court, in Hanbury v. Thompson, expressly said, with respect to supplemental jurisdiction, that there is no requirement that Congress must make a specific reference to Section 1367 to limit its reach. So just like this statute, the Medicare statute, does not have to say, oh, and by the way, supplemental jurisdiction is not allowed here. It doesn't — the entire process of this claims-driven review establishes that the amount in controversy is what governs jurisdiction in this case and not supplemental jurisdiction. So it's — this is not a case where — and there were several cases that the district court cited which are examples of the fact that an express statement of supplemental jurisdiction is not applicable here. The Court cited to United States v. Erica. That's a 1982 U.S. Supreme Court decision where the Congress — where the Court held that Congress's enactment of the Medicare statute specifically precluded review in the court of claims under the Tucker Act of an adverse hearing decision. Now, the Court went on to say that where the Medicare statute conspicuously fails to authorize further review for determination of the amount of the Part B award in the context of the statute's precisely drawn provisions, this omission provides persuasive evidence that Congress deliberately intended to foreclose further review of such claims. So the Erica case is a case that deals with supplemental jurisdiction, and it deals with supplemental jurisdiction in the context of the Medicare statute. Now, the cases that my opponent cites to — with respect to supplemental jurisdiction do not involve the Medicare Act. And that is what's critical in this case, is we need to look at the Act itself and see what the Act has — provides with respect to the claims, which — the time limits for filing claims, the various different — Am I right that there is no decision other than Judge Crawford's decision on this issue precisely anywhere in the country? And if I'm right about that, how could that possibly be? But anyway. I believe — Judge Crawford is not the only court in the country that has dealt with the underlying substantive decision. Your question is asking about whether he is the only — that's the only district court in the country that has ruled on this precise issue of supplemental jurisdiction under the Medicare Act. Give me two seconds here, Your Honor. I believe — I believe that is correct. The ABC v. Home Health Services case was another supplemental jurisdiction — I mean, that's neither here nor there. It's a — you know, we've got to deal with the issue, but it's a little unusual. I think it's unusual perhaps because no one has ever tried to bootstrap claims into the court which don't meet the amount in controversy, which so blatantly don't meet the requirements for judicial review. And supplemental jurisdiction is being grasped at as the only jurisdiction in order to try to get these two claims into court. That's what it's always used for. Well, not necessarily. I mean, I think that supplemental jurisdiction is used in different contexts, Your Honor. This is — particularly with respect to the Medicare Act, the statutes that my opposing counsel refers to with respect to use of supplemental jurisdiction are Sections 1331 and Sections 1332. Particularly with diversity cases, Your Honor, supplemental jurisdiction is frequently allowed when they are in Federal court on a Federal claim and there are also State court claims. And that is traditionally what supplemental jurisdiction is used for. And — As well as when those claims don't meet the jurisdictional amount. Correct. But, again, those — Congress provides the jurisdiction that the court has. Congress, under 1332, provides for diversity jurisdiction. Under 1331, provides for Federal question jurisdiction. Under the Medicare Act, a separate standard of jurisdiction is provided. And so these cases that are otherwise relied upon for supplemental jurisdiction are inapplicable in this case when jurisdiction is expressly provided by the Medicare Act. Can I just ask — it seems — it doesn't seem to me to make perfect sense that the statute works this way. Maybe you're right, this is how it works. But as your adversary points out in his briefing, doesn't it, in effect — because these claims could have been aggregated before the agency. Sure. Yes. In effect, you have to anticipate negative decisions and ask for delays before the agency so as to aggregate a set of clearly related claims when it seems to make sense — it would seem to make more sense that the agency would hope that they'd be aggregated. Well, I think that — And require them to be aggregated. The agency doesn't always know when a claimant is bringing claims. A claimant knows — for example, Dr. Bloom is repeatedly requesting coverage for his continuous glucose monitor and supplies. He continuously knows that these are coming forward. The instructions that a claimant is given when they get an adverse decision, expressly — the form expressly states, are there any related claims? Do you have any other claims? Now, in Mr. Bloom's case, except for one occasion, he did not list any other claims, but he attached a list of all the affirmative decisions, the grants of benefits that he had before him. But he did not aggregate these claims. He did not try to aggregate these claims. And there are instructions that are given to the claimant that tell them, if you have related claims, let us know about them. And so it is up to the claimant, who knows that he's got further claims coming, in order to bring them together and focus the court. And the court — I'm sorry, the agency will give extensions for good cause. And that is good cause, if they want to aggregate the claims. But they need to do that at the administrative level, and they can't wait until they get to the district court level, thereby making the — all the administrative regulations superficial. Kennedy. Does the government have a view, just to go back to the initial issue of statutory interpretation of the Act and the structure and so on, do you have a view of the legislative history, particularly the legislative history from 1986 to 2000? Because it seems to me — I mean, I've got something here, and look, these are all just bits of legislative history, but if the dispute is not satisfactorily resolved through this administrative process, and if contested amounts are greater than $1,000, the individual would be able to request judicial review of the Secretary's final decision. Aggregation of claims to meet these thresholds would be permitted. That's the history. Maybe that explains why. But that doesn't fully explain why they deleted the word aggregated in 2000. But could you — That's correct. And I thought I had a footnote on that, Your Honor, in the brief, and I can't put my hands on that at the moment. But it is, I think, significant to note that, first of all, I do want to go back to one issue, and that is with respect to the statutory interpretation. This is really a straightforward case of statutory interpretation, to begin with, because the plaintiff's — appellant's claim as to individual is mistaken. That, again, back to the idea of looking at this Medicare statute as a whole, it divorces the word individual from the statutory language. And specifically, Section 405G says that any individual, after a final decision, may obtain review of such decision. So it's not the individual who is able to accumulate any number of claims. The statute specifically discuss the secretary's final decision. That's what's subject to review, not the individual. Each individual final decision of the secretary is entitled to a separate request for review, has a final decision — has its own exhaustion requirements, has its own administrative record, and it's subject to its own deadlines for filing requests. So each individual decision — as I said, this is a — the cases are replete that talk about Medicare, say that this is a claims-driven statute. So to ignore the claims and say that the individual can do whatever they want is — just misses the point and misconstrues the entire statute. Thank you, Your Honor. If I may, I'll just — maybe I'll go backwards on some of the points that I just heard. First, the — in 405G, it does say a final decision. And in this case, all three decisions are final decisions. So it really doesn't add anything to the inquiry. They are all — they are three final decisions that are being addressed. With regard to whether or not Dr. Bloom was required or had to aggregate his claims before the secretary, again, the provision talks about aggregation to get a hearing or an appeal before the secretary, where the amount of controversy is $100. All three of these claims were for more than $100, so Dr. Bloom had no need to aggregate before the secretary. The only time it comes into play here is really at the district court level, right, where it's the $1,000 limit. And just, again, the normal rules of apply Rule 18. How do you figure out? You add them all up. In terms of one other aspect here that was mentioned in the papers with regard to Rule 18, one idea of that is that you don't get inconsistent results. To avoid inconsistent results. So, for example, in this case, as a result of this — as a result of the denial of jurisdiction here, Dr. Bloom has 11 final decisions saying, absolutely, a CGM is durable medical equipment. And he has two where the secretary has concluded it's not a medical — not a medical equipment, and he has two where the secretary has concluded it's not a medical  Now, there's no — in the case of the Smith v. Berryhill case decided by the Supreme Court in May, and I know one point that they had in there was the strong presumption of judicial review. I did hear a little bit about the diversity statute and the Federal question, 1331, with regard to supplemental jurisdiction. And I know the point that we keep making is there's nothing in section 1367, supplemental jurisdiction statute, that says this is limited to cases on diversity or this is limited to cases under, you know, 1331. It doesn't say anything like that. It's just a statute of general applicability. I don't know if there was a question about whether or not there's another decision from a secretary. I don't believe there is. I think under the — I think in some ways, from the timing perspective, because the requirement to file a Federal suit within 60 days, you can see that the decisions from the secretary may come out at any different — at any time and not necessarily in any order. So a litigant would need to line up the cases timing-wise to make it happen so that he could have multiple claims. But I don't — I suspect that Dr. Bloom is not unique in his situation, that is, he's had a series of claims that he has no incentive at the administrative level to aggregate, and then because, you know, he loses on some, prevails on one, he seeks to aggregate at the — in district court. It's a little unusual that that has not yet been litigated, at least to a decision by the district court or a U.S. court anywhere in the country. I think it is fairly unusual only in the sense that, generally speaking, it's almost uneconomic to litigate the matters, right? We're fighting here about $3,988, right? So you'd have — a litigant would have to either be able to have the resources — a litigant on Medicare would have to have the resources to fund that litigation or find essentially pro bono counsel to handle the case. So the idea that you have such an extension of the timing right for this FACTS scenario to — but I did want to say, particularly in this case, Dr. Bloom specifically requested, because of the 60-day limit, requested an extension of the timeline, the 60 days, to file suits. So I know we've cited in the record — I know at record BA58, BA60, for example, and BA76, Dr. Bloom specifically requested the Secretary extend the 60 days, and he said specifically, so that I can meet the federal amount in controversy. So, again, right down the pipe from Dr. Bloom's view, this is operating exactly as it would in a diversity context. In the diversity context, of course, the statute says civil actions. Here we contend it just says the word individual, right? And just like in the diversity context, as long as you've got one that meets the amount of controversy — in fact, I'll let Adam up — but the fact that you have more, smaller claims that are add-on to the amount of controversy doesn't affect anything. Likewise here. He's got one claim that is indisputed. It meets the amount of controversy. He has two other claims that also add on to the value, but it doesn't take away from the grant of original jurisdiction, which the district court found in this case. So from the — at the district court, the district court held, as far as I can tell, just the sheer existence of the Medicare Act meant that the supplemental jurisdiction statute couldn't apply. But as Your Honor pointed out, the supplemental jurisdiction statute requires that it be expressly provided. So from our perspective, the district court just didn't apply and give any meaning to the words expressly provided. It has to be an express provision. And there is — the sheer existence of the Medicare Act doesn't qualify in that regard. And I know we've had cases where — not in the Medicare context, but where supplemental jurisdiction was applied to other — to allow supplemental jurisdiction to apply to other Federal claims. I know the Exxon case, for example, from the Supreme Court had a hypothetical doing that. I know we cited, for example, Dressbarn, Pierre, and Shoman cases for those points. And so I say I'm over my time, but there are no further questions. Thank you, Your Honor. I'd just like to ask one more question of the government. You argued that if supplemental jurisdiction were allowed here, the Federal courts would be inundated by all these supplemental claims. But it seems to me that there's substantial latitude for district judges to turn those down. In the first place, under 1367A, it only applies where the claims are so related to claims in the action within the original jurisdiction that they form part of the same case or controversy. So to the extent that the tag-along cases involve different issues, the district judge could just say no. And in B, there are substantial additional bases that the district judge can give for turning down cases. So I'm not sure — I mean, whereas in this case, they seem to be exactly the same, and the decision with respect to the admitted claim would mandate the decision of the others, those things could be accepted. And ones that complicated the matter for district judges by getting into other things could just be sent away. Your Honor, to answer your question, in this particular case, there are reasons why the exception to supplemental jurisdiction would not apply as well. So I understand that — I mean, factual reasons that distinguish the claims. In this case — You could argue those to the district judge. But, Your Honor, in this case, there are compelling circumstances. And in subsection C of section 1367, there is a provision for a district court using its discretion to decline jurisdiction, exercise of supplemental jurisdiction. And if that — in this particular case, the — that should have or would have been done because the judicial economy does not support the allowance of the court, a district court having to — or any district court opening the floodgates to multiple decisions like this, which — with separate administrative records, you'll notice in this case there are three administrative records before this court. And that's because there are three separate final decisions of the secretary. And those are not identical. But they all seem to arise from the same general set of facts. It does. But these — these administrative records are not identical. They include different — different dates of decisions, different kinds of decisions, different evidence that was submitted at the — at the administrative level. And so the — here, Dr. Blum already has his decision. You could say to the district judge, this is not an appropriate case for letting the — letting the tag-along cases in because they involve so many different issues on different administrative records. And the district judge would say, well, like, what are — give me an illustration of what are the differences, and you'd either persuade the district judge or you wouldn't. Your Honor, because of the number of cases involved in Medicare reviews, the supplemental jurisdiction and the Medicare Act sets this amounting controversy requirement. It also sets exhaustion requirements. It also sets deadline — time limit deadlines as requirements. These are all requirements to get into district court to get your — to support jurisdiction. And so if the — you're going to say, well, we're not going to worry about the amounting controversy, what other jurisdictional limitations? I didn't worry about it. I simply said that — that there's no absolute — I mean, the argument is not don't worry about it. But the argument is that there shouldn't be an absolute bar to the inclusion under supplemental jurisdiction, not that — not that you wouldn't be able to argue and that the district judge shouldn't take account of — of circumstances that distinguish the tag-along claims from the — from the sufficient claims. Certainly, that's one way of interpreting it. But the supplemental jurisdiction statute itself says that where it's expressly provided otherwise by another Federal statute, you can't exercise supplemental jurisdiction. And so the government's position is that the Medicare statute itself precludes application of supplemental jurisdiction. Clearly precludes it. Plainly precludes it. Yes. Yes. Thank you. Your position is very plainly. Thank you very much, Your Honors. May I briefly just — very, very briefly. You went over time before, but you can have an additional minute. I appreciate, Your Honor. Just very — coming back very quickly to the questions that were asked. So, yes, I think the claim that there's compelling circumstances just because there's another statute is not the kind of compelling circumstances that was contemplated by the exception to rule. And I do think if the Court begins to examine the supplemental jurisdiction issue, I think under this Court's decision in Katzen, just as Your Honor was indicating, the Court would have to examine four factors, right? He would have to examine whether or not it would promote economy, convenience, fairness, or if he was not going to exercise supplemental jurisdiction, economy, convenience, fairness, or comedy. And he could make that examination. Conceivably, a court might — So your argument that a Medicare recipient just doesn't have any incentive to aggregate before the agency as long as his claim is less than $100 and just doesn't know that he should aggregate, was your client unaware that he might need to aggregate his claims in order to bring them in district court? I would say, coming back to your original point about — I would say clairvoyance. At the time that the original claims were filed, if they're more than $100, he knows that he will have an opportunity for an ALJ hearing and an appeal. But what he won't know and can't predict is which of those claims ultimately might reach a district court. So, again, as we say in this case, Dr. Bloom has, at this point, 11 final — 11 final decisions, including one from a district court, finding that CGM is durable medical equipment. But at the time he filed the original claims, he couldn't know which ones were going to go through that process. So, again, from the perspective of a statute that's trying to deal with elderly, ill, and frequently both, lay people, for them to try to strategize as an attorney seems more than is contemplated by the Medicare Act. It's designed to be done at these levels by lay people, not by lawyers. Thank you. Thank you both. Well argued on both sides. And we'll take them out.